UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JASON WENK                              CIVIL ACTION NO. 12-cv-2847

VERSUS                                  JUDGE HICKS

PARISH OF BOSSIER, ET AL                MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Jason Wenk ("Plaintiff") is a convicted prisoner. He was housed at the David Wade Correctional Center when he was given the opportunity to earn extra good time credit by participation in the state-run Steve Hoyle Intensive Substance Abuse Program. Plaintiff elected to participate in the program, so he was transferred to the Bossier Parish Medium Security Facility where the program is administered. Plaintiff was not happy with the conditions in Bossier Parish, and he commenced this action by filing a 65-page complaint against the Sheriff, several deputies, and two state employees who managed the program.

The court earlier dismissed some defendants who were entitled to Eleventh Amendment immunity and Plaintiff's claims regarding the adequacy of the administrative remedy procedure, deprivation of property, and verbal abuse. Docs. 24 and 27. Now before the court are Motions to Dismiss (Docs. 43, 45 and 60) that attack the remaining claims for

failure to state a claim on which relief may be granted. For the reasons that follow, it is recommended the motions be granted.

**Parish of Bossier**

Parish of Bossier, listed in the complaint as Bossier Parish, moves for dismissal on the grounds that the parish and the sheriff are separate legal entities, and it is the sheriff who is responsible for administration of the jail. That is correct, and the court has often dismissed the parish from similar jail conditions cases. See Jones v. Anderson, 2012 WL6814121, *6 (W.D. La. 2012). Plaintiff offers no opposition to this motion. It is recommended the motion be granted and all claims against the parish be dismissed.

**Equal Protection**

Plaintiff alleged in his complaint that he was required to stay in the program for nine months before he graduated, but similarly situated inmates stayed only five or six months and received the same 180 days of good-time credit. He asserted that this gave rise to a claim for violation of the Equal Protection Clause. Plaintiff states near the end of one of his memoranda (Doc. 66) that he "would like to voluntarily dismiss the claim of equal protection at this time." Accordingly, it is recommended the claim be dismissed.

**Conditions of Confinement**

    **A. The Allegations**

Plaintiff was housed in the C-2 housing unit from June 12 through December 13, 2012. Soon after he arrived, he began filing grievances and complaining to officials about

conditions in the unit. Many of those grievances are now allegations in his complaint. For example, he alleges that the tray cart used to transport meals had no heating element, and tray covers were uninsulated, which resulted in cold food by the time of service. Plaintiff alleges there was no outdoor recreation for some weeks, but "hit and miss" opportunities were afforded after he filed a grievance. He alleges that outdoor recreation was allowed some weekends but not others, and his time outside was only 17, 20, and 30 minutes on some occasions.

Plaintiff filed a grievance because cleaning supplies were available only between 4:00 a.m. and 6:00 a.m. and were issued without any latex or rubber gloves to be used when cleaning the sinks and toilet areas. He repeats this in his complaint and alleges that jail staff refused to provide rags and a bleach/water solution to clean the tables on which meals were consumed.

Plaintiff alleges the sinks in C-2 were inoperable on two occasions. Sometimes they would not shut off, and other times sinks would not drain properly. Plaintiff alleges that Deputy Royce Coggins attempted to adjust the water pressure on one faucet but packed up his tools and left after an inmate told him that he did not know what he was doing. Plaintiff alleges that this resulted in another week with only trickling water from the sinks and no hot water. Plaintiff also complains of the noise he experienced in the unit from dominoes slammed on steel tables, inmates yelling during card games, and the like.

Plaintiff alleges the air conditioner in the unit began freezing up on August 21, 2012. This required that the unit be shut off to thaw, which led to accumulation of condensation on the floor, bad smells from the toilet area and high heat given the 75 men inside a dorm that was designed for an air conditioner and did not have windows that could be opened or fans to provide ventilation. Plaintiff alleges in his complaint that this was an every day event on each shift, but he states in one of his memoranda (Doc. 66) that "we went 16 days without vent or air flow of any sort" between August 21 and when Plaintiff was moved from the unit on December 13. Plaintiff said deputies told him on numerous occasions that there had been over 90 work orders submitted to fix problems, including the air conditioner. On one occasion a sergeant opened a back door to allow some air flow, but that happened only once.

Plaintiff alleges that Lori Culpepper, with the state program, delivered grievances to Warden Boyer from Plaintiff and 25 other inmates. She later told Plaintiff and others in the program that Boyer was not happy about the grievances, and she would no longer take grievances to Boyer.

**B. Cruel and Unusual Punishment**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. It "does not mandate comfortable prisons," Rhodes v. Chapman, 101 S.Ct. 2392 (1981), but prison officials "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 114 S.Ct.

1970 (1994). Only those deprivations that deny "the minimal civilized measure of life's necessities" are sufficiently grave to form an Eighth Amendment violation. Rhodes, 101 S.Ct. at 2399.

If a prisoner satisfies this objective component of an Eighth Amendment claim, he must also show that a prison official acted with a sufficiently culpable state of mind. In prison condition of confinement cases, that state of mind is the "deliberate indifference" standard that is often applied in medical care claims. Wilson v. Seiter, 111 S.Ct. 2321, 2326-27 (1991). A prison official does not run afoul of that standard "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994).

Wilson explained that some conditions of confinement may, in combination, establish a violation when each would not do so alone. For example, a low cell temperature at night combined with a failure to issue blankets could result in the deprivation of a single, identifiable human need such as warmth, food, or exercise. But "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." Wilson, 111 S.Ct. at 2327.

### C. Analysis

None of the conditions alleged by Plaintiff, either alone or in combination, caused an excessive risk to his safety or deprived him of the minimal civilized measure of life's necessities. Plaintiff was housed in the unit for only a few months. He complains that food was served cold, but there is no assertion that he missed any meals or was deprived of adequate nutrition. Cleaning supplies were provided to prisoners, although at only certain times and without the provision of gloves, but there is no allegation that the bathroom and other areas could not be kept sanitary despite those limitations. The lack of a towel to clean dining tables might not have allowed the most antiseptic dining environment, but there is no indication the tables were particularly dirty or that any health problems were caused Plaintiff by a lack of sanitation.

The dorm in which Plaintiff was housed included open areas that allowed for movement and exercise beyond what could be done by an inmate kept continuously in a cell. Plaintiff admits that outdoor recreation was also sometimes allowed, but he complains that it was sporadic and too short when allowed. He does not allege that he was unable to otherwise exercise or that he suffered any negative health effects as a result. The prisoner in Hernandez v. Velasquez, 522 F.3d 556 (5th Cir. 2008) alleged confinement to a shared cell and the denial of outdoor and out-of-cell exercise for 13 months. The Fifth Circuit concluded that he could not show deliberate indifference as required by Farmer because there was no evidence that this placed him at a substantial risk of serious harm. In this case,

Plaintiff generally complains that he would have liked more outdoor opportunities, but he does not allege that a lack of exercise caused or placed him at substantial risk of serious harm.

Plaintiff was dissatisfied with the reliability of the sinks in the bathroom area in C-2. There may have been times when the sinks produced little water or no hot water, but there is no indication that Plaintiff was not able to achieve his hygiene needs through showering and otherwise. Plaintiff was justifiably frustrated with the water pressure problems, but those temporary situations did not deny him the minimal civilized measure of life's necessities. The same is true with respect to the noise levels in the dorm. Jails, made largely of steel and concrete, are often noisy. That noise may have been very annoying and inconvenient to Plaintiff, but it did not rise to the level of cruel and unusual punishment within the meaning of the Eighth Amendment.

Plaintiff complains that the air conditioner froze up and had to be turned off for an extended time on each occasion. He contends that the unit was without vent or air flow of any sort on 16 days during the time between August 21 and December 13, 2012. (He contends that the air conditioner was not fixed until June 2013, several months after he was transferred.) Plaintiff likens the condition in the unit to a rainforest of putrid smells.

There is no allegation that any prison official deliberately caused the air conditioner to fail. In Wilson, the prisoner conceded that if a prison boiler malfunctioned accidentally during a cold winter, an inmate would have no basis for a claim even if he suffered

significant harm from the cold. <u>Wilson</u>, 111 S.Ct. at 2325. There is little doubt the lack of air and ventilation during the Louisiana summer and fall led to conditions that no person would choose to experience. Plaintiff describes the conditions as miserable and at times disgusting, but they were not constant, and Plaintiff does not allege that he suffered any significant health or other problems because of the 16 days over the course of several months when the air conditioner was temporarily shut off.

Plaintiff's experiences on the days when the air was turned off were likely awful, but they do not amount to cruel and unusual punishment within the meaning of the Supreme Court's Eighth Amendment jurisprudence. Plaintiff asks the court to consider not only the lack of ventilation but the noise, water problems, cold food, and other issues as a whole, but <u>Wilson</u> made clear that such an assessment of "overall conditions" is improper. None of Plaintiff's complaints about the conditions in the jail, alone or in relevant combination, amounted to cruel and unusual punishment. Those claims should, therefore, be dismissed for failure to state a claim on which relief may be granted.

**Lack of Organized Religious Gatherings**

Plaintiff alleges that ministers volunteered at the Bossier facility, but it amounted only to the volunteers making rounds in the dorms. Plaintiff complains that the noise, smell, and layout of the dorm did not allow him to "properly concentrate and worship in these conditions." He alleges that officials should be held liable for not ensuring a place for religious services away from the dorm area and providing a church call-out schedule.

An inmate retains his First Amendment right to the free exercise of religion, subject to reasonable restrictions and limitations necessitated by penological goals. See Turner v. Safley, 107 S.Ct. 2254 (1987) and O'Lone v. Estate of Shabazz, 107 S.Ct. 2400 (1987). To establish a free exercise violation, an inmate must demonstrate that prison officials prevented him from engaging in his religious conduct without any justification related to legitimate penological concerns. Turner, 107 S.Ct. at 2261-62.

First Amendment claims by prisoners often arise when a prison rule affects religious liberty, or when a request by a prisoner is denied. In this case, however, Plaintiff has not alleged that there is any rule or regulation prohibiting services, and he has not even alleged that he requested the organization of Christian religious services in or out of the dorm. Accordingly, he has not alleged that any official prevented him from participating in a religious practice. Jail and prison officials are not obligated to sua sponte organize unrequested religious services to avoid constitutional liability.[1]

**Fall in the Shower**

Plaintiff alleges that the floor in the dorm became slippery with condensation each time the air conditioner was turned off. He states that he was on his way to the shower when he slipped on the floor, fell, and injured his left shoulder, back, and neck. Plaintiff alleges that he stayed on the floor for over five minutes while officers, who could not see in the dorm because of fogged windows, were summoned by inmates who yelled and kicked the door.

---

[1] Plaintiff stated in a memoranda that he wished to voluntarily dismiss his religion claim as to defendants Susan Tucker and Lori Culpepper.

Plaintiff states that a deputy and nurse responded and took him to the medical area. He was given ibuprofen and sent to a lockdown area for medical observation. Plaintiff alleges that he "wasn't badly hurt" but was stiff in his neck and left shoulder. The ibuprofen was continued for five days.

These allegations present, at best, a claim of negligence. The civil rights statute invoked by Plaintiff, 42 U.S.C. § 1983, does not provide a cause of action against a state official for a mere negligent act that causes unintended injury. Daniels v. Williams, 106 S.Ct. 662 (1986) (affirming dismissal of inmate's claim that he slipped on a pillow negligently left on the stairs by a deputy); Andrews v. Belt, 274 Fed. Appx. 359, 360 (5th Cir. 2008) ("Andrews's assertion that the defendant may have known about the leaky toilet but failed to repair it at most alleges negligence, which is not actionable under § 1983"). To the extent Plaintiff complains about the medical care that followed his fall, his allegations do not depict any named defendant acting with deliberate indifference to a serious medical need, constituting an unnecessary and wanton infliction of pain, as is required to state a claim under Section 1983. Easter v. Powell, 467 F.3d 459, 463 (5th Cir.2006). The allegations suggest that Plaintiff received fairly prompt and reasonable care for his admittedly minor injuries.

**Conclusion**

Plaintiff was obviously unhappy with the conditions he found in Bossier Parish after he arrived from the state prison. Some of the conditions alleged, particularly regarding the

lack of ventilation, depict a very unpleasant situation that was present on approximately 16 days over the course of six months. Neither this problem nor Plaintiff's complaints about the food, sanitation, noise, and other matters caused him any harm other than aggravation and unhappiness. That is often the case when one is convicted of a felony and sent to prison. The Constitution places limits on the conditions that inmates must endure, but those described in this case do not rise to the level to amount to cruel and unusual punishment.

Accordingly,

**IT IS RECOMMENDED** that the **Motions to Dismiss (Docs. 43, 45, and 64)** be **granted** and that all of Plaintiff's remaining claims be **dismissed with prejudice** for failure to state a claim on which relief may be granted.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of June, 2014.

Mark L. Hornsby
U.S. Magistrate Judge